**UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF COLORADO**
Bankruptcy Judge Thomas B. McNamara

In re:

CAROL T. WARING and
PAUL R. WARING,

Debtors.

Bankruptcy Case No. 16-12624  TBM
Chapter 13

_____

**ORDER DENYING CONFIRMATION OF PLAN AND
DISMISSING PAUL R. WARING FROM CASE**
_____

   The foundation of American bankruptcy law is the promise of a "fresh start."  The Bankruptcy Code[1] provides "a procedure by which certain insolvent debtors can reorder their affairs, make peace with their creditors, and enjoy 'a new opportunity in life with a clear field for future effort, unhampered by the pressure and discouragement of preexisting debt."[2]  Animated by these laudable goals, bankruptcy protects the "honest but unfortunate debtor"[3] while at the same time serving as a safety valve ensuring the future vitality of our economy.  But against these lofty notions, this case presents a more down to earth and practical question:  Can a deceased debtor get a "fresh start"?

   Paul R. Waring ("Mr. Waring") filed a petition under Chapter 13 of the Bankruptcy Code.  Unfortunately, he died just 26 days later.  His death made it impossible for him to attend the required meeting of creditors.  And, he died before being able to confirm a Chapter 13 debt adjustment plan.  Nevertheless, his wife and co-debtor, Carol T. Waring ("Mrs. Waring"), wants to carry on in bankruptcy with him.  Acting for herself and ostensibly for her deceased husband, she has proposed a five-year Chapter 13 plan to pay the couple's creditors.

   The Court appreciates Mrs. Waring's intentions and acknowledges her great loss but concludes that because Mr. Waring died so quickly after filing the petition for bankruptcy relief, "further administration" is not possible.  The reality is that Mr. Waring, whose life already has ended, cannot obtain a "fresh start" through the Chapter 13 bankruptcy process.  So, with regret, the Court denies confirmation of the Chapter 13 plan proposed by Mrs. Waring after Mr. Waring's death and dismisses Mr. Waring as a bankruptcy debtor.  However, should she wish, Mrs. Waring may amend her bankruptcy petition, statements, and schedules in order to continue by herself with her own bankruptcy case.

---

[1]  United States Bankruptcy Code, 11 U.S.C. §§ 101 *et seq.*
[2]  *Grogan v. Garner*, 498 U.S. 279, 286-87 (1991) (citing *Local Loan Co. v. Hunt*, 292 U.S. 234, 244 (1934)).
[3]  *Id.*

1

## I. Jurisdiction and Venue.

This Court has jurisdiction to enter final judgment on the issues presented in this case pursuant to 28 U.S.C. § 1334. The matters are core proceedings under 28 U.S.C. § 157(b)(2)(A) (matters concerning administration of the estate), (b)(2)(L) (confirmation of plans), and (b)(2)(O) (other proceedings affecting the liquidation of the assets of the estate). Venue is proper in this Court pursuant to 28 U.S.C. §§ 1408 and 1409.

## II. Factual and Procedural Background.

Paul R. Waring and his wife, Carol T. Waring (together, the "Debtors"), jointly filed for protection under Chapter 13 of the Bankruptcy Code on March 23, 2016. (Docket No. 1.) Prior to their bankruptcy, the Debtors lived primarily on income from their separate social security benefits and Mr. Waring's Teamsters annuity, supplemented by rent collected on a small real estate investment property. (Docket No. 1 at 11 and 39.) They lived quite modestly with their income consumed almost entirely by their expenses. (Docket No. 1 at 38-41.) Aside from mortgage debt, most of their creditors were credit card companies and providers of medical services. (Docket No. 1 at 26-35.) The Debtors fell below the "median family income"[4] threshold for the State of Colorado.

The same day that they filed for bankruptcy protection, the Debtors jointly proposed a Chapter 13 Plan. (Docket No. 2, the "Original Chapter 13 Plan.") The heart of the Original Chapter 13 Plan was a commitment to pay $543 per month to the Chapter 13 Trustee for five years (to be distributed for payment of administrative expenses and unsecured debt) while maintaining their mortgage payments. The Debtors arrived at the proposed payment amount using Schedules I and J. Specifically, in Schedule I, the Debtors added together Mr. and Mrs. Waring's separate monthly social security benefits ($1,590 and $813, respectively), Mr. Waring's monthly annuity ($1,722), and the monthly rental income ($700) received from their investment property. In Schedule J, they totaled their combined monthly expenses. Then, the Debtors subtracted their Schedule J expenses from their Schedule I income, arriving at the $543 "monthly net income figure." After the Original Chapter 13 Plan was filed, and as is routine in these type of proceedings, the Chapter 13 Trustee set a meeting of creditors under Section 341.[5] The Court scheduled a prompt Section 1324 confirmation hearing. (Docket No. 11.)

But the routine nature of this bankruptcy case ended abruptly on April 18, 2016 — Mr. Waring died. (Docket No. 21.) He died only 26 days after the Debtors filed their joint bankruptcy petition. Having passed away, Mr. Waring was not able to face his creditors and the Chapter 13 Trustee at the Section 341 meeting. Unaware of his death, the Chapter 13 Trustee and a creditor objected to the Original Chapter 13 Plan. (Docket Nos. 18 and 19.) And, based on the filed objections, the Debtors' Original Chapter 13 Plan was not confirmed. Instead, at the scheduled confirmation hearing, the Court provided its condolences but also *sua sponte* raised the issue of

---

[4]    11 U.S.C. § 101(39A) (defining the term "median family income").
[5]    Unless otherwise indicated, all references to "Section" are to Sections of the United States Bankruptcy Code. 11 U.S.C. §§ 101, *et. seq.*"

whether it had to dismiss Mr. Waring as a Chapter 13 debtor because of his death so early in the bankruptcy process. (Docket No. 23.) The Chapter 13 trustee took no position; but the Debtors' counsel submitted a detailed legal brief ending with a request: "Mrs. Waring asks that her case not be dismissed, her plan confirmed, and the case allowed to proceed." (Docket No. 25 at 2.) Mrs. Waring proposed to act "on behalf of both of [the Debtors]." (*Id.* at 4.) The Debtors did not request an evidentiary hearing on the dismissal issue.

Subsequently, Mrs. Waring submitted a "First Amended Chapter 13 Plan." (Docket No. 28, the "Amended Chapter 13 Plan.")[6] No creditors objected. The Amended Chapter 13 Plan is virtually identical to the Original Chapter 13 Plan except that the Debtors (acting through Mrs. Waring) slightly increased the value for their real estate investment property and added an additional "one time payment" of $12,420 to the Chapter 13 Trustee which apparently represents an anticipated recovery on Mr. Waring's life insurance policy. The Debtors did not file updated Schedules I (Income) or J (Expenses) after Mr. Waring's death. And, the proposed Amended Chapter 13 Plan continues to include the deceased Mr. Waring as a co-debtor. The Debtors still propose the same $543 monthly payment to the Chapter 13 Trustee, even though Mr. Waring's death surely must have resulted in at least some change to the Debtors' combined income, expenses, and "net monthly income."

So, along with the issue of the impact of Mr. Waring's death on the bankruptcy case, the Amended Chapter 13 Plan also is ripe for consideration. Having received legal briefing from the Debtors and having reviewed the Amended Chapter 13 Plan, the Court is prepared to rule on the issues. No further legal briefing would assist the Court in making its determinations.

### III. Legal Discussion.

#### A. The Court Has an Independent Duty to Ensure Satisfaction of Confirmation Requirements and May Dismiss *Sua Sponte* After Notice.

In this case, there is no intimation whatsoever of bad faith or abuse of process. To the contrary, Mrs. Waring has proposed an Amended Chapter 13 Plan that may be quite beneficial to creditors. Neither the Chapter 13 Trustee nor any creditors has objected. So, Mrs. Waring might wonder: what business is it of the Court to interject itself in this bankruptcy case and raise issues that others have not?

The answer is that the Court has an independent duty to determine whether a Chapter 13 plan meets the statutory requirements for confirmation under the Bankruptcy Code. The United States Supreme Court recently confirmed this duty:

> In other contexts, we have held that courts have the discretion, but not the obligation, to raise on their own initiative certain nonjurisdictional barriers to suit. Section 1325(a) does more than codify this principle; it *requires* bankruptcy courts to address and

---

[6] On July 21, 2016, Mrs. Waring filed a "Verification of Confirmable Plan Pursuant to L.B.R. 3015-1(f)." (Docket No. 30, the "Verification.") The Verification did not reference the pending legal issues concerning Mr. Waring's death. Thereafter, the Court erroneously confirmed the Amended Plan. (Docket No. 31.) However, the Court subsequently vacated the Confirmation Order to address the threshold legal issues. (Docket No. 34.)

3

> correct a defect in a debtor's proposed plan even if no creditor raises the issue.

*United Student Aid Funds, Inc. v. Espinosa*, 559 U.S. 260, 277 n.14 (2010). Thus, the Court can, and should, evaluate the Amended Chapter 13 Plan despite the lack of objections.

After providing sufficient notice and an opportunity to be heard, the Court also may proceed *sua sponte* to dismiss a pending case if warranted under the circumstances. More specifically, the Court may consider dismissal on its own initiative under Fed. R. Bankr. P. 1016, Section 1307(c), and Section 105(a), as well as the inherent power of the Court. As set forth in more detail below, Fed. R. Bankr. P. 1016 provides that upon the death of the debtor, the case "may be dismissed; or if further administration is possible and in the best interest of the parties, the case may proceed…." In Chapter 13 cases, "the likelihood is that the case will be dismissed." Fed. R. Bankr. P. 1016 Advisory Committee Note (1983). The Court also may act *sua sponte* to dismiss under Section 1307(c), which generally governs dismissal of Chapter 13 cases, and Section 105, a statute of broader application.[7] *Tennant v. Rojas (In re Tennant)*, 318 B.R. 860, 868-69 (9th Cir. BAP 2004) ("Section 105(a) makes 'crystal clear' the court's power to act *sua sponte* where no party in interest or the United States trustee has filed a motion to dismiss a bankruptcy case."); *In re Brown*, 399 B.R. 162, 165 (Bankr. W.D. Va. 2009) ("A bankruptcy court may dismiss a chapter 13 case *sua sponte*… pursuant to sections 105(a) and 1307(c) of the Bankruptcy Code.").

Other bankruptcy courts have dismissed Chapter 13 cases on their own initiative under similar circumstances. For example, in *In re Martinez*, 2013 WL 6051203 (Bankr. W.D. Tex. Nov. 15, 2013), the debtor filed for bankruptcy protection but then died before confirmation of his Chapter 13 plan. The Court denied confirmation and dismissed under Fed. R. Bankr. P. 1016. *Id.* *1.

Of course, *sua sponte* dismissal would be improper without adequate notice and a due process opportunity for parties in interest to be heard. In this case, the Court raised the issue on the record in a hearing with the Debtors' counsel and the Chapter 13 Trustee as well as through a subsequent Minute Order. (Docket No. 23.) Thereafter, the Debtor's counsel submitted a detailed and thoughtful legal brief arguing that this case should not be dismissed and instead should

---

[7] Section 105 states: "The court may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title. No provision of this title providing for the raising of an issue by a party in interest shall be construed to preclude the court from, sua sponte, taking any action or making any determination necessary or appropriate to enforce or implement court orders or rules, or to prevent an abuse of process." Section 105(a) codifies the bankruptcy court's equitable powers. *Scrivner v. Mashburn (In re Scrivner),* 535 F.3d 1258, 1262–3 (10th Cir. 2008). Such equitable powers permit the bankruptcy court to fill in statutory gaps. *Redmond v. Jenkins (In re Alternative Fuels, Inc.),* 789 F.3d 1139, 1146 (10th Cir. 2015). This does not mean that Section 105(a) provides an all-purpose *carte blanche* for the bankruptcy court to "do equity" irrespective of the provisions of the Bankruptcy Code. *In re Escalera Resources Co.*, 2015 WL 7351396, at * 4 (Bankr. D. Colo. Nov. 9, 2015). Quite to the contrary. A bankruptcy court may never employ Section 105(a) to "contravene the express provisions of the Code." *Law v. Siegel,* ___ U.S. ___, 134 S.Ct. 1188, 1197 (2014); *Alternative Fuels,* 789 F.3d at 1149. But where the proposed action is not expressly circumscribed and instead is in harmony with other provisions of the Bankruptcy Code as well as its overriding purpose, Section 105(a) provides a bankruptcy court with power to act. Such are the circumstances in this Chapter 13 case.

proceed toward confirmation. As a result, the Court is satisfied that Mrs. Waring has had an adequate opportunity to present her position.

**B.     Death and the Bankruptcy Code.**

The Bankruptcy Code contains 264 Sections and literally thousands of subsections, some well-known and many obscure, that form the backbone of modern bankruptcy law. It is a long read. But one would read for many hours in vain if trying to locate the provision expressly governing the death of a debtor after commencement of a bankruptcy case. The reason is that the Bankruptcy Code actually contains no specific statute on the topic of a debtor's death. The absence of an express statutory provision is fairly surprising since some types of bankruptcy cases, particularly individual Chapter 11 and Chapter 13 cases, often last for five years (or more). So, post-petition death is not all that uncommon.

Without a specific statutory provision on the topic of post-bankruptcy death, the Court considers the structure of the Bankruptcy Code as applied in Chapter 13 to derive guidance. The Court starts at the beginning. A voluntary bankruptcy case is commenced by the debtor filing a petition. 11 U.S.C. § 301. Only an "individual with regular income" can file a Chapter 13 case. 11 U.S.C. § 109(e). Thus, it is apparent that a person who has died cannot start the bankruptcy process after death. Further, the probate estate of a deceased person is not eligible to file a bankruptcy petition. *Estate of Gray v. McDermott (In re Estate of Gray)*, 2011 WL 3946729, at *5 (E.D. Mich. Sept. 6, 2011). Mrs. Waring candidly concedes these points. (Docket No. 25 at 2.) But, of course, the present circumstances are somewhat different: Mr. Waring filed his bankruptcy petition (jointly with Mrs. Waring) when he was alive and still had regular income — and then he died.

Reverting back to the typical Chapter 13 process, right after the petition is filed, a Chapter 13 trustee is assigned to perform certain statutory supervisory duties. 11 U.S.C. § 1302. The Chapter 13 trustee must convene a meeting of creditors during which the Chapter 13 trustee and creditors may make inquiries of the debtor. 11 U.S.C. § 341(a). The debtor must "appear and submit to examination under oath." 11 U.S.C. § 343. In this case, the Section 341 meeting of creditors was scheduled for May 5, 2016. (Docket No. 11.) But, Mr. Waring died before the meeting and so could not be put under oath to testify regarding his financial affairs.

The Bankruptcy Code also requires that the Chapter 13 "debtor shall file a plan." 11 U.S.C. § 1321.[8] This is perhaps the biggest difference between Chapter 13 debt adjustment and Chapter 7 liquidation. In this case, Mr. Waring and his wife filed the Original Chapter 13 Plan (Docket No. 2) and the Court set the required confirmation hearing for May 25, 2016. (Docket No. 11.) 11 U.S.C. § 1324. But, Mr. Waring died before the confirmation hearing and the Original Chapter 13 Plan was not confirmed. Normally, confirmation "vests all of the property of the estate in the debtor." 11 U.S.C. § 1327(b). Since the Original Chapter 13 Plan was not confirmed, there was no revesting of property of the estate in the Debtors.

---

[8]     Unlike a Chapter 11 reorganization, in a Chapter 13 case, only "the debtor" may file a debt adjustment plan. *Compare* 11 U.S.C. § 1121 and 11 U.S.C. § 1321.

The Chapter 13 plan is the linchpin of the entire Chapter 13 exercise. The typical premise of the Chapter 13 plan is that the debtor must pay "all of the debtor's projected disposable income" to the Chapter 13 trustee for the "applicable commitment period" (usually three or five years). *See* 11 U.S.C. § 1325(b) (explaining requirements if there is an objection). In this case, the Original Chapter 13 Plan appeared to be based upon that formula and included both Mr. and Mrs. Waring's income. After he passed, at least part of Mr. Waring's income (his social security benefits) ceased by operation of law. *See* 20 C.F.R. § 404.311(b) ("your entitlement to old-age benefits ends with the month before the month you die.")[9] In any event, a Chapter 13 debtor is required to make payments under the debt adjustment plan. Confirmation, followed by faithful performance of the Chapter 13 plan provisions, generally is the path to achieve the discharge goal. 11 U.S.C. § 1328(a) ("as soon as practicable after completion by the debtor of all payments under the plan… the court shall grant the debtor a discharge…").

Thus, a review of the Chapter 13 statutory framework suggests that the debtor generally must be alive to navigate the various stages of the process and achieve the "fresh start" of discharge after plan completion. But to reiterate, there is no express statutory provision governing a Chapter 13 debtor's post-petition death.

**C.      Death and the Federal Rules of Bankruptcy Procedure.**

Unlike the Bankruptcy Code, the Federal Rules of Bankruptcy Procedure (which supplement the Bankruptcy Code and sometimes fill in gaps) do contain some guidance on death during a bankruptcy case. Fed. R. Bankr. P. 1016 states in full:

> Death or incompetency of the debtor shall not abate a liquidation case under chapter 7 of the Code. In such event the estate shall be administered and the case concluded in the same manner, so far as possible, as though the death or incompetency had not occurred. If a reorganization, family farmer's debt adjustment, or individual's debt adjustment case is pending under chapter 11, chapter 12, or chapter 13, the case may be dismissed; or if further administration is possible and in the best interest of the parties, the case may proceed and be concluded in the same manner, so far as possible, as though the death or incompetency had not occurred.

The first two sentences of Fed. R. Bankr. P. 1016 pertain to Chapter 7 liquidations and are fairly clear in application. The basic principle is that a Chapter 7 case should continue irrespective of the death of the debtor after the petition. This makes good sense because in the majority of Chapter 7 cases, the filing of the petition operates to create an estate consisting of "all legal and equitable interests of the debtor in property," but subject to potential exemptions. 11 U.S.C. § 541 (property of the estate); 11 U.S.C. § 522 (exemptions). Then, a Chapter 7 trustee is appointed. 11 U.S.C. §§ 701-703. The main job of a Chapter 7 trustee is to "collect and reduce to money the property of the estate for which such trustee serves, and close such estate as expeditiously as is compatible with the best interests of the parties in interest." 11 U.S.C. § 704. If funds are

---

[9]      Upon Mr. Waring's death, some or all of his regular social security benefits may have passed to his wife as his beneficiary. 20 C.F.R. §§ 404.335-338.

6

available in a Chapter 7 liquidation, then such funds must be distributed in order of statutory priority. 11 U.S.C. § 726. In this process, the debtor generally plays no active role. In fact, unless the Chapter 7 estate is solvent, a debtor typically does not even have standing to participate in matters concerning administration of the bankruptcy estate. *Cult Awareness Network, Inc. v. Martino (In re Cult Awareness Network, Inc.)*, 151 F.3d 605, 607 (7th Cir. 1998); *In re Morreale*, 2015 WL 3897796, at *7-8 (Bankr. D. Colo. Jun. 22, 2015). So, it only stands to reason that the death of a Chapter 7 debtor during the pendency of a bankruptcy case will not usually impede the liquidation process.

Chapter 13 is an altogether different process in which the debtor plays a central and ongoing role, from the filing of the petition through discharge some three to five years later. So, the last sentence of Fed. R. Bankr. P. 1016 (governing Chapter 13 cases) operates differently than the first two sentences of Fed. R. Bankr. P. 1016. In Chapter 13:

> … *the case may be dismissed; or if further administration is possible and in the best interest of the parties*, *the case may proceed* and be concluded in the same manner, so far as possible, as though the death or incompetency had not occurred.

(emphasis added.) Thus, unlike a Chapter 7 liquidation, in a Chapter 13 debt adjustment case there are two options upon the death of the debtor: (1) the case may be dismissed; or (2) the case may proceed. And the case may proceed *only* if "further administration is possible" and continuing the case "is in the best interests of the parties."

Given the structure of the Chapter 13 process, it should not be surprising that the normal default presumption upon death is dismissal. In fact, the Advisory Committee Note accompanying the text of Fed. R. Bankr. P. 1016 candidly states:

> In a chapter 11 reorganization case or chapter 13 individual's debt adjustment case, *the likelihood is that the case will be dismissed*.

Fed. R. Bankr. P. 1016 Advisory Committee Note (1983) (emphasis added). However, ultimately the decision is discretionary with the bankruptcy court. In making the determination, the bankruptcy court should consider whether "further administration is possible;" however, the meaning of that phrase is not spelled out either in the Bankruptcy Code or in the Federal Rules of Bankruptcy Procedure. In any event, if "further administration is possible," then it would be necessary to assess the "best interests of the parties." Having exhausted the provisions of the Bankruptcy Code and the Federal Rules of Civil Procedure, the Court turns to case law analysis.

D. **Death and Bankruptcy Case Law**.

There is no controlling precedent from either the United States Supreme Court or the United States Court of Appeals for the Tenth Circuit dictating the result if a Chapter 13 debtor dies before confirmation of a debt adjustment plan. Nevertheless, the Court is not writing on an entirely clear slate. A number of decisions from bankruptcy courts and district courts provide some guidance. Mrs. Waring relies upon a pair of Colorado decisions, *In re Fogel*, 2015 WL 5032055 (D. Colo., Aug. 26, 2015)[hereinafter, "*Fogel III*"] and *In re Fuller*, 2010 WL 1463150

7

(Bankr. D. Colo., Mar. 11, 2010), for her argument that this case should not be dismissed and instead continue apace.

In the *Fogel* case, the bankruptcy court confirmed the debtor's debt adjustment plan about two months after the debtor filed for Chapter 13 bankruptcy protection. After confirmation, the debtor made some payments consistent with the Chapter 13 plan — but then the debtor died. No party informed the bankruptcy court about the debtor's death until about two years later. Meanwhile, the debtor's wife (who was not a joint debtor) was appointed as personal representative of her husband's probate estate and continued to make payments on the debtor's Chapter 13 plan for the remainder of the three-year term. After all the plan payments had been completed by the debtor's wife, she finally informed the bankruptcy court about her husband's death and asked for a discharge to enter. The bankruptcy court denied the discharge and *sua sponte* dismissed the bankruptcy case. *In re Fogel,* 507 B.R. 734 (Bankr. D. Colo. 2014), *recons. denied,* 512 B.R. 659, 660-62 (Bankr. D. Colo. 2014) [hereinafter, "*Fogel I*" and "*Fogel II*," respectively]. On appeal, the district court reversed. *Fogel III*, 2015 WL 5032055. The central appellate holding was:

> While a Chapter 13 case 'may be dismissed' upon the death of the debtor, the rule requires that the bankruptcy court consider whether 'further administration [of the plan] is possible' and whether further administration of the plan is 'in the best interests of the parties.' Fed. R. Bankr. P. 1016. If the bankruptcy court, in its discretion, determines that these factors weigh in favor of continuing the plan, 'the case may proceed and be conducted in the same manner, so far as possible, as though the death… had not occurred.' *Id*. Thus, Rule 1016… does not mandate dismissal upon the death of the debtor.

*Id*., 2015 WL 5032055, at *2 (brackets in original). Further, the district court held that the debtor's spouse, who had been appointed as the personal representative of the debtor's probate estate, could represent her deceased husband in the bankruptcy case. Faced with a *fait accompli* (that all of the debtor's payments under the confirmed plan were already completed by the debtor's spouse), the district court reversed the dismissal. Ultimately, on remand, the deceased debtor received a discharge.

Although there are some similarities between the facts in *Fogel* and this case, there are at least two critical differences. First, the debtor's Chapter 13 plan in *Fogel* was confirmed *before* he died. Second, all of the payments actually were completed under the confirmed Chapter 13 plan before the bankruptcy court was advised of the debtor's death and his spouse requested a discharge. Notably, the district court focused repeatedly on the Chapter 13 plan already having been confirmed. The district court characterized Fed. R. Bankr. P. 1016 as requiring the bankruptcy court to first "consider whether 'further administration [of the plan] is possible' and second assess "whether further administration of the plan is 'in the best interests of the parties.'" *Fogel III*, 2015 WL 5032055, at *2 (brackets in original). The district court further instructed that the bankruptcy court consider whether the factors weigh "in favor of continuing the plan." *Id*. Since the *Fogel* scenario involved a Chapter 13 plan that was confirmed before the debtor's death and that was completed after his death, the decision really does not provide much guidance

8

regarding what should happen if a debtor (like Mr. Waring) dies very early in a bankruptcy case, before plan confirmation.

The other decision advanced by Mrs. Waring, *Fuller,* is similar to *Fogel*; but different than this case. In *Fuller*, a husband and wife filed for Chapter 13 bankruptcy. They proposed a debt adjustment plan that was confirmed. For about three years, they made the monthly payments required under their confirmed plan. But then, the debtor wife died. The debtor husband completed all payments under the confirmed Chapter 13 plan. Later, he requested that his deceased wife also be awarded discharge. The bankruptcy court agreed and discharged both debtors. *Fuller*, 2010 WL 1463150, at *1-2. Like *Fogel III*, the *Fuller* decision does not address the proper course for a post-petition but pre-confirmation death in a Chapter 13 case.

The holdings in *Fogel III* and *Fuller,* are in the mainstream of bankruptcy jurisprudence. Numerous cases stand for the proposition that a debtor who dies after confirmation of a Chapter 13 plan but before completion of all payments may be able to obtain a discharge if either someone else completes the payments or an undue hardship is demonstrated. Some of the most recent examples are: *In re Inyard*, 532 B.R. 364 (Bankr. D. Kan. 2015) (debtor died after making 29 payments under confirmed 36-month plan); *In re Hoover*, 2015 WL 1407241 (Bankr. N.D. Cal. Mar. 24, 2015) (debtor died after making 59 monthly payments under confirmed 60-month plan); *In re Kosinski*, 2015 WL 1177691 (Bankr. N.D. Ill. Mar. 5, 2015) (debtor died after making 54 monthly payments under confirmed 60-month plan); *In re Ferguson*, 2015 WL 4131596 (Bankr. W.D. Tex. Feb. 24, 2015) (debtor died after making about 42 monthly payments on confirmed 60-month plan).[10] Notably, in the foregoing cases, the debtors were close to completing payments under their respective confirmed Chapter 13 plans when they died.

However, this case is quite different since Mr. Waring died only 26 days after he filed the Chapter 13 petition and before confirmation of a debt adjustment plan. Bankruptcy courts from other jurisdictions generally dismiss in such circumstances. A decision acknowledged by Mrs. Waring in her legal brief, *Martinez*, 2013 WL 6051203, is directly on point. In *Martinez*, the debtor filed for Chapter 13 relief but passed away about six months later "without obtaining confirmation." *Id*., at *1. The Court *sua sponte* dismissed and ruled:

> Debtor's case cannot continue pursuant to [Fed. R. Bankr. P. 1016] because further administration is not possible. In Chapter 13, only the Debtor may propose a plan.
> ….
>
> Nor will it be possible to confirm a plan in the future without a living debtor to propose a plan.

---

[10] However, these cases do not suggest that "further administration" always is possible after Chapter 13 plan confirmation. To the contrary, death after confirmation of a Chapter 13 debt adjustment plan often results in denial of discharge and dismissal. *In re Miller*, 526 B.R. 857 (D. Colo. 2014) (affirming bankruptcy court decision denying discharge and dismissing *sua sponte* because debtor who died "three years into his confirmed plan" had no employment earnings). The facts and circumstances of each case (such as the interval between Chapter 13 plan confirmation and death, the amount and number of payments made after Chapter 13 plan confirmation and before death, whether or not the case is a joint bankruptcy case, and whether another party makes post-death payments) matter greatly in the analysis and the Court's exercise of its discretion.

9

*Id*.

Mrs. Waring did not provide the Court with any case law authority in which a debtor who died prior to confirmation of a Chapter 13 plan was allowed to proceed with the case anyway.[11] And the *Martinez* decision, which holds otherwise, does not stand alone. For example, in *In re Spiser*, 232 B.R. 669 (Bankr. N.D. Tex. 1999), the bankruptcy court dismissed a Chapter 13 case after both debtors died prior to confirmation of a debt adjustment plan. Similarly, in *In re Navarro*, 2012 WL 51993743 (Bankr. D. Md. Oct. 19, 2012), the debtor filed a Chapter 13 case and proposed a plan promptly thereafter but died before the confirmation hearing. The bankruptcy court denied confirmation of the pending Chapter 13 plan and dismissed the case after observing that "even if the Debtor's heirs obtain the appointment of a Personal Representative for Debtor's estate from the Probate Court, that entity would have no regular income and would be unable to propose a Chapter 13 plan." *Id*., 2012 WL 51993743, at *2.

In the context of a joint petition, a recent decision, *In re Terry*, 2016 WL 699553 (Bankr. S.D. W.Va. Feb. 22, 2016), also is instructive. In that case, a husband and wife jointly filed for bankruptcy protection under Chapter 13. The case was converted to Chapter 7 and reconverted back to Chapter 13. Shortly after the case was reconverted, the debtor husband died. Following her husband's death, the debtor wife proposed a debt adjustment plan, which the bankruptcy court confirmed. However, with respect to the deceased debtor, the Court determined: "Mr. Wilson passed prior to confirmation of the amended plan. It does not appear possible to complete the plan following his death. Absent a showing of cause, the Court will [*sua sponte*] dismiss the case as to Mr. Wilson [the deceased co-debtor]." *Id*., at n.1.

Thus, the majority of bankruptcy courts that have been faced with the same dilemma presented in this case reason that a debtor who dies prior to confirmation of a Chapter 13 plan should be dismissed from the bankruptcy process.

E.  **The Court Denies Confirmation of the Amended Chapter 13 Plan, Dismisses Mr. Waring as a Debtor, and Allows Mrs. Waring to Proceed Separately.**

The Chapter 13 statutory framework strongly suggests that a debtor who dies very early in a case and before confirmation of a Chapter 13 plan presumptively should not be able to proceed. Unlike a Chapter 7 liquidation, the Chapter 13 path requires the active participation of a debtor at all stages and for years. Regrettably, Mr. Waring just died too early in the process. He was not able to attend the meeting of creditors required by Sections 341 and 343. But, more importantly, he was not able to obtain confirmation of his debt adjustment plan prior to his death. And, only the debtor may file a Chapter 13 plan under Section 1321.

Nevertheless, Mrs. Waring filed an Amended Chapter 13 Plan. She did not amend Schedules I and J concerning the Debtors' income and expenses. She has not presented a new calculation of the Debtors' "projected disposable income" even though Mr. Waring's death

---

[11] The Court has engaged in independent research and located one decision in which a bankruptcy court confirmed a Chapter 13 plan after the debtor's death since the debtor's sister was responsible for funding the debt adjustment plan. *In re Terry*, 2015 WL 1321486 (Bankr. E.D. Pa. Mar. 13, 2015), *aff'd* 543 B.R. 173 (E.D. Pa. 2015). For the reasons set forth in this decision, the Court respectfully disagrees with the *Terry* decision.

10

dictates that he will no longer receive future income. *See* 20 C.F.R. § 404.311(b). Further, Mrs. Waring has not alleged that she is the duly-appointed personal representative of her husband's probate estate. But even if Mrs. Waring can act as Mr. Waring's representative (under the rationale of *Fogel III*), the Court determines that it cannot confirm the Amended Chapter 13 Plan. In these circumstances, the Amended Chapter 13 Plan fails under 11 U.S.C. §§ 1322(a), 1325(a)(1), and 1325(a)(6).

Ordinarily, the presumption is that a Chapter 13 case will be dismissed after the death of the debtor. Fed. R. Bankr. P. 1016 Advisory Committee Notes (1983). However, the Court should consider whether "further admission is possible." In the Court's view, "further administration" (within the meaning of Fed. R. Bankr. P. 1016) may be possible if a Chapter 13 plan has been confirmed prior to a debtor's death. But "further administration" will almost always be impossible if a debtor dies before confirmation of a Chapter 13 plan, because no terms for administration of the estate have been established. *See Spiser*, 232 B.R. 669 (dismissing Chapter 13 case when both debtors died prior to confirmation of a plan); *In re Redwine*, 2011 WL 1116783 (Bankr. N.D. Ga., Mar. 8, 2011) ("further administration may only be possible if a plan has been confirmed"). As noted in *Spiser*,

> The term 'further administration' implies that the case would be carried to its normal conclusion with payments to the creditors *as provided in the confirmed plan*....

*Spiser*, 232 B.R. at 673; *see also Fogel III*, 2015 WL 5032055, at *2 (repeated references to "further administration of the plan"). Generally, with no confirmed Chapter 13 plan, there can be no "further administration."

Put another way "further administration" refers to tasks that are more limited than prosecution of the entire Chapter 13 bankruptcy case from the very beginning including attendance at the Section 341 meeting, proposing a Chapter 13 plan, and prosecuting the proposed Chapter 13 plan to confirmation. The debt adjustment plan is the key of the Chapter 13 process. It is the document that sets the terms making possible "further administration." Once the terms are defined and confirmed in a Chapter 13 plan, it might be possible to "further administer" a bankruptcy case even though the debtor died if there is a source of payments or sufficient payments have been made such that a discharge may be warranted. *Fogel III*, 2015 WL 5032055, at *2; *see also Inyard*, 532 B.R. 364; *Hoover*, 2015 WL 1407241; *Kosinski*, 2015 WL 1177691; *Ferguson*, 2015 WL 4131596.

But, if a debtor dies at the very start of the Chapter 13 case (before confirmation) "further administration" is not possible and dismissal of the deceased debtor is warranted. That is the current case. The Court, in the exercise of its sound discretion and based upon the facts and status of this case determines that "further administration" is not possible for Mr. Waring. Accordingly, the Court need not assess the "best interest of creditors." The Court also finds that allowing Mrs. Waring to propose a debt adjustment plan for Mr. Waring after his death would effectively, but impermissibly, place this Court into the role of probate court. Having died just 26 days after filing for bankruptcy protection, issues concerning Mr. Waring's estate are best left to the Colorado probate process. Dismissal is warranted for Mr. Waring. *See Martinez*, 2013 WL 6051203; *Spiser*, 232 B.R. 669; *Navarro*, 2012 WL 51993743; *Terry*, 2016 WL 699553.

11

### F. The Joint Debtor Twist.

The only remaining issue is whether Mrs. Waring may remain in bankruptcy without Mr. Waring because of the "joint" nature of this case. The Debtors commenced their case by filing a joint petition under Section 302(a), which permits a married couple to file jointly. Section 302 is only procedural and is "designed for ease of administration and to permit the payment of one filing fee." *In re Estrada*, 224 B.R. 132135 (S.D. Cal. 1998); *see also In re Janesofsky*, 22 B.R. 973, 974 (Bankr. D. Colo. 1982) ("Section 302 is procedural only"). A joint petition "simply results in two different debtors' bankruptcy cases being commenced by a single petition, and treated as a single case for administrative purposes." *Grunwald v. Beck (In re Beck)*, 298 B.R. 616, 624 (Bankr. W.D. Mo. 2003). However, the filing of a joint petition does not itself result in the substantive consolidation of the separate estates of the two bankruptcy co-debtors. Instead, "separate estates continue to exist as to each debtor unless the court orders substantive consolidation." *In re Feltman*, 285 B.R. 82, 86 n.9 (Bankr. D.D.C. 2002); *see also In re Kevitch*, 2006 WL 6627818 (Bankr. E.D. Pa. Feb. 8, 2006) (same).

In this case, although the Debtors filed a joint petition, the Court has not entered an order substantively consolidating their bankruptcy estates. Thus, the bankruptcy estates of Mr. and Mrs. Waring currently are separate and not consolidated; albeit that the Court has been effectively jointly administering the separate cases under one case number. *See Redmond v. Lentz & Clark, P.A. (In re Wagers)*, 340 B.R. 391, 394 n.1 (Bankr. Kan. 2006) ("The practice in this district… as in most of the country, is to administer joint petitions jointly without entering an order to do so."); *see also A. Resnick and H. Sommer, 2* COLLIER ON BANKRUPTCY ¶ 302.02[1][b] (LexisNexis 16th ed. Supp. 2016) ("most courts automatically treat joint cases as jointly administered, without enter of a separate order for joint administration").

Because of the separate nature of their bankruptcy estates, the Court can dismiss Mr. Waring while allowing Mrs. Waring to remain in her own separate bankruptcy. To effect such result, the Court will order that Mrs. Waring may proceed in Chapter 13 in her own separate case (without Mr. Waring) using the same case number and without the necessity of paying a further filing fee. Should Mrs. Waring elect to remain in bankruptcy, she must file new amended Schedules I and J, along with her own Chapter 13 plan. Alternatively, Mrs. Waring retains her absolute right to dismiss under Section 1307(b).

### IV. Conclusion.

This case illustrates the difficult intersection of death and bankruptcy law. The Debtors filed a joint petition for protection under Chapter 13 of the Bankruptcy Code. But Mr. Waring died just 26 days after filing the petition. He died before the Court confirmed a Chapter 13 debt adjustment plan. The Court has determined that, under the circumstances of this case, "further administration" not possible. Additionally, no reason has been advanced why Mr. Waring can or should remain in Chapter 13. The bottom line is that he can no longer receive a "fresh start" from this Court. So, while his bankruptcy case must end, the Court protects the rights of Mrs. Waring to proceed separately should she wish.

Accordingly, the Court hereby ORDERS as follows:

1. The Debtors' Amended Chapter 13 Plan is DENIED as unconfirmable;

2. Mr. Waring is DISMISSED as a Debtor from this case;

3. Until further order of the Court, this case shall remain open under the same case number with Mrs. Waring being the only bankruptcy Debtor.

4. Mrs. Waring shall have until **September 5, 2016** to determine whether she wishes to continue as a separate Chapter 13 Debtor in this case.

    a. If Mrs. Waring no longer wishes to pursue her Chapter 13 bankruptcy case, she must file a Notice of Dismissal under Section 1307(b).

    b. If Mrs. Waring wishes to pursue her separate Chapter 13 case, then, on or before **September 5, 2016**, she shall file new amended Schedules I and J (along with any other amendments of other Schedules appropriate under the circumstances), as well as, a new Chapter 13 debt adjustment plan. If a new Chapter 13 plan is filed, the Court will issue an order establishing further requirements for notice and a confirmation hearing schedule.

DATED this 22nd day of August, 2016.

BY THE COURT:

*Thomas B. McNamara*

Thomas B. McNamara
United States Bankruptcy Judge

13